IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-01285-NYW-KAS

APARTMENT INCOME REIT CORP.,

    Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. B0713MEDTE2202301, and
EVEREST NATIONAL INSURANCE COMPANY,

    Defendants.

---

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Certain Underwriters' Motion to Dismiss Plaintiff's First Amended Complaint's Fourth and Fiffth [sic] Claims for Relief (the "Motion" or "Motion to Dismiss"). [Doc. 78]. The Court has reviewed the Motion and the related briefing and concludes that oral argument would not assist in the resolution of this matter. For the reasons set forth herein, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This Court draws the following facts from the Amended Complaint and Jury Demand (the "Amended Complaint"), [Doc. 59],[1] and assumes they are true for purposes

---

[1] Limited portions of the publicly filed Amended Complaint are redacted. *See, e.g.*, [Doc. 59 at ¶ 48]. An unredacted restricted version of the Amended Complaint is docketed at [Doc. 60]. Because the Court need not cite any redacted allegations to rule on the Motion to Dismiss, the Court cites to the public version of the Amended Complaint.

of resolving the Motion to Dismiss.  Plaintiff Apartment Income REIT Corp. ("Plaintiff" or "AIR") is a named defendant in an antitrust multidistrict litigation arising out of allegations that AIR and other entities "conspired to fix and inflate the price of multifamily rental housing across the country" by using revenue management software "to coordinate and agree upon rental housing pricing and supply." [*Id.* at ¶¶ 35–39].  Plaintiff has also been served with a document preservation notice, information requests, and a subpoena related to various actions and investigations initiated by state and federal governments, though it has "not been identified as the target of any" such action.  [*Id.* at ¶ 42].

AIR holds a primary data protection liability policy (the "Primary Policy") through Defendant Certain Underwriters at Lloyd's London Subscribing to Policy No. B0713MEDTE2202301 ("Certain Underwriters") and an excess liability policy (the "Excess Policy") through Defendant Everest National Insurance Company ("Everest"). [*Id.* at ¶¶ 13, 19].  The Primary Policy states that "[t]his insurance shall be governed by and construed in accordance with the law of New York." [Doc. 59-1 at 4].[2]  It also provides that "any disputes involving this Policy shall be resolved" by applying New York law.  [*Id.* at 9, 43]. The Excess Policy does not contain a choice-of-law provision, but states that "[e]xcept as provided herein, this policy shall follow form to the terms and conditions of the Primary Policy."  [Doc. 59-2 at 2].

In June 2023, AIR submitted a claim for coverage under the Policies related to the antitrust allegations, but Certain Underwriters and Everest disclaimed coverage.  [Doc. 59 at ¶¶ 2, 4].  As a result, Plaintiff initiated this lawsuit on May 8, 2024, [Doc. 1], and filed

---

[2] The Court may consider the Policies in ruling on the Motion to Dismiss because they are attached to the Amended Complaint.  *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024).

2

its Amended Complaint on January 30, 2025, [Doc. 59]. Plaintiff raises five claims: (1) a breach of contract claim against Certain Underwriters and Everest, [*id.* at ¶¶ 75–89]; (2) two declaratory judgment claims regarding coverage, one asserted against Certain Underwriters and the other asserted against Everest, [*id.* at ¶¶ 90–107]; (3) a common law bad faith claim against Certain Underwriters and Everest, [*id.* at ¶¶ 108–13]; and (4) a claim under Colo. Rev. Stat. § 10-3-1115 for unreasonable delay or denial of insurance benefits against Certain Underwriters and Everest, [*id.* at ¶¶ 114–16].

In the Motion to Dismiss, Certain Underwriters seek dismissal of Plaintiff's bad faith claims based on the Primary Policy's New York choice-of-law provision. *See* [Doc. 78]. The Motion is fully briefed, *see* [Doc. 93; Doc. 104],[3] and the Court considers the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation

---

[3] Everest "joins in and adopts" the arguments raised in the Motion to Dismiss. [Doc. 80 at ¶ 6]. Although the Court permitted Everest's joinder in the Motion to Dismiss, the Court **ORDERS** that it will not permit any Party to simply "join" another Party's forthcoming substantive motions (such as a motion for summary judgment). To the extent any Parties seek the same substantive relief based on identical arguments, such Parties may file a single motion and be bound accordingly. To the extent that there are distinctions as to relief requested or arguments made, the Party must file its own affirmative motion, setting forth its own affirmative arguments and not incorporating by reference except as permitted by Rule 10(c) of the Federal Rules of Civil Procedure. This order does not apply to non-substantive motions, such as motions to amend the Scheduling Order or motions for an extension of time.

omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

Certain Underwriters argue that AIR's bad faith claims should be dismissed under Rule 12(b)(6) because neither is cognizable under the applicable law. *See* [Doc. 78]. Specifically, it argues that New York law governs Plaintiff's claims pursuant to the Primary Policy's choice-of-law provision, and because New York does not recognize a cause of action for bad faith breach of an insurance contract, Plaintiff's common law bad faith claim must be dismissed. [*Id.* at 5–7, 11]. It similarly asserts that Plaintiff cannot assert a claim under Colo. Rev. Stat. § 10-3-1115 in a case governed by New York law. [*Id.* at 9–10]. Plaintiff, on the other hand, insists that the choice-of-law provision is inapplicable to the bad faith claims, either because those claims are outside the scope of the provision or because the provision should not be enforced. [Doc. 93 at 5–10, 12–14]. Plaintiff argues that the Court should apply the "most significant relationship test" set out in the Restatement (Second) of Conflict of Laws (1971) (the "Restatement") and find that Colorado law governs this case. [*Id.* at 3–5, 10–12].

### I. Colorado Choice-of-Law Principles

The Parties' dispute requires an examination of applicable choice-of-law principles in light of the Primary Policy's choice-of-law provision. Because the Court has diversity jurisdiction over this case, *see* [Doc. 59 at ¶ 11], the Court applies the conflict-of-law rules

4

of Colorado, the forum state, *see Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014).[4]

"Colorado follows the Restatement (Second) of Conflict of Laws (1971) . . . for both contract and tort actions." *Id.* at 1310 (citing cases). Section 6 of the Restatement provides that absent a statute setting forth the governing law, courts should consider the following principles when determining which state's substantive law is applicable in a given case: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *See* Restatement § 6(2).

The "choice of law in a given case is not made once for all issues; each issue is to receive separate consideration if it is one that would be resolved differently under the local law rule of two or more of the potentially interested states." *Flaherty v. Banner Life Ins. Co.*, No. 20-cv-00581-REB-GPG, 2022 WL 1198909, at *1 (D. Colo. Feb. 7, 2022) (quotation omitted). For both tort and contract claims, the Restatement sets forth a "most significant relationship" test under the principles articulated in § 6. *See* Restatement

---

[4] "Any conflict of laws analysis begins, perforce, with a determination whether a conflict actually exists," because a choice-of-law analysis is only necessary if there is an outcome-determinative conflict of law. *Richardson v. Allstate Fire & Cas. Ins. Co.*, 637 F. Supp. 3d 1186, 1190 (D. Colo. 2022). Here, the Parties appear to agree that an outcome-determinative conflict of law exists, as New York does not recognize a common law claim for bad faith, and a claim based on a Colorado statute would not be cognizable under New York law. *See* [Doc. 78 at 9–11; Doc. 93 at 12–15]; *see also Polidoro v. Chubb Corp.*, 354 F. Supp. 2d 349, 352 (S.D.N.Y. 2005).

§ 145(1) (tort claims); *id.* § 188(1) (contract claims); *see also Kipling*, 774 F.3d at 1310–11. But the use and parameters of the most significant relationship test vary depending on the type of claim at issue. For contract claims, the Restatement provides that a court must first determine whether an enforceable choice-of-law provision sets forth the applicable law. "The law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless (a) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (b) application of the chosen state's law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2). If there is no applicable choice-of-law provision, courts consider the following factors "to be taken into account in applying the principles of § 6 to determine" the state with the most significant relationship to the contract dispute:

    (a)   the place of contracting,

    (b)   the place of negotiation of the contract,

    (c)   the place of performance,

    (d)   the location of the subject matter of the contract, and

    (e)   the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Id.* § 188(1)–(2).

Tort claims are analyzed differently. The Restatement does not contemplate consideration of an applicable choice-of-law provision governing tort claims, instead directing courts to proceed directly to the most significant relationship test. *See id.*

6

§ 145(1) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."). For tort claims, the relevant contacts in determining the state with the most significant relationship to the dispute include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

## II. Plaintiff's Bad Faith Claims

Colorado law recognizes two types of bad faith claims in the insurance context: (1) common law bad faith and (2) unreasonable delay or denial of insurance benefits (or "statutory bad faith"). *Dowgiallo v. Allstate Ins. Co.*, No. 19-cv-03035-KMT, 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020). Turning first to common law bad faith, all insurers have an inherent duty to deal in good faith with their insureds. *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). To prevail on a common law bad faith claim, "the insured must prove that (1) the

insurer's conduct was unreasonable and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable." *Ayala v. State Farm Mut. Auto. Ins. Co.*, 628 F. Supp. 3d 1075, 1082 (D. Colo. 2022).

In addition, Colorado statutes impose certain obligations on insurance companies, instructing that insurers "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). Section 10-3-1116 creates a private cause of action to remedy violations of § 10-3-1115 that is in addition to and different from common law bad faith claims. *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 972 (Colo. App. 2011); *see also* Colo. Rev. Stat. § 10-3-1116. To succeed on a statutory bad faith claim, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

The Parties' dispute turns on whether the New York choice-of-law provision applies to Plaintiff's bad faith claims, as Certain Underwriters argue, see [Doc. 78 at 5–7], or whether the provision is inapplicable to the claims, as Plaintiff contends, [Doc. 93 at 5–7]. Certain Underwriters assert that the choice-of-law provision is broadly applicable to "any dispute" involving the Primary Policy, "which encompasses both bad faith claims asserted." [Doc. 78 at 5]. Plaintiff, however, argues that Colorado choice-of-law principles dictate application of the Restatement's most significant relationship test. [Doc. 93 at 3–10]. The Court considers the Parties' arguments on a claim-by-claim basis, starting first with the common law claim.

### A. Common Law Bad Faith

As the Parties acknowledge, *see* [Doc. 78 at 6 n.1; Doc. 93 at 6], this Court recently answered the question presented by the Parties with respect to a common law claim, *see Bartelli v. Empower Annuity Ins. Co. of Am.*, No. 23-cv-01507-NYW-SBP, 2024 WL 4528146, at *4–8 (D. Colo. Oct. 18, 2024). As the Court recognized in *Bartelli*, Colorado courts have not definitively answered whether parties to an insurance policy "can contract around the implied duty of good faith and fair dealing imposed by Colorado law" or whether "a broad contractual choice-of-law provision can supersede the general rule that, for tort claims, courts must apply the law of the state with the most significant relationship to the dispute," so the Court had to predict how the Colorado Supreme Court would rule on this issue. *Id.* at *6. After analyzing both Colorado insurance cases generally and the specific policy language at issue, the Court ruled that "unless an insurance contract clearly and expressly demonstrates that the parties have contracted around the insurer's good faith duty, Colorado common law, and Colorado's choice-of-law rules," it was "appropriate to follow Colorado's well-established choice-of-law rules for tort claims and apply the most significant relationship test under § 145 of the Restatement." *Id.* at *8. The Court reaches the same conclusion in this case.

It is well-established that a common law bad faith claim in the insurance context sounds in tort. *Cary*, 68 P.3d at 466; *Goodson*, 89 P.3d at 414. These tort claims "exist independently of the liability imposed by an insurance contract." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App. 2003); *see also Flickinger v. Ninth Dist. Prod. Credit Ass'n of Wichita*, 824 P.2d 19, 24 (Colo. App. 1991) (A common law bad faith claim is "separate from, and independent of, any claim under the policy itself."). "While a

9

common law bad faith claim may be tangentially related to an insurance policy—in that the policy was the starting point of the insurer and insured's relationship—the tort claim is decidedly independent from the contract." *Bartelli*, 2024 WL 4528146, at *7; *see also Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1268 (Colo. 1985) ("[T]he duty of good faith derives from the relationship of an insured claimant to the provider of benefits."). Thus, the most-significant-relationship test applies to common law claims for bad faith breach of an insurance contact. *Richardson v. Allstate Fire & Cas. Ins. Co.*, 637 F. Supp. 3d 1186, 1195 (D. Colo. 2022) (applying Restatement § 145 test to common law claim despite choice-of-law provision stating that "any and all claims or disputes related in any way related to this policy" would be governed by Illinois law).

Certain Underwriters' arguments about the Primary Policy language do not change this conclusion. The Primary Policy states that "any disputes involving this Policy shall be resolved" by applying New York law. [Doc. 59-1 at 9, 43]. To be sure, this language is broadly worded. But the Court remains convinced that, "unless an insurance contract *clearly and expressly demonstrates* that the parties have contracted around the insurer's good faith duty," Colorado law dictates application of the Restatement for common law bad faith claims. *Bartelli*, 2024 WL 4528146, at *8 (emphasis added). Indeed, the Colorado Court of Appeals has concluded that a similarly worded policy did not require the application of a choice-of-law provision to ancillary common law bad faith claims. *See Flickinger*, 824 P.2d at 24 (bad faith claim was not a claim arising "under" the insurance policy); *see also Bartelli*, 2024 WL 4528146, at *7 (this Court ruling that a choice-of-law provision dictating that any dispute arising "in connection with" the policy did not apply to common law bad faith claim.

10

Accordingly, the Court concludes that the choice-of-law provision is inapplicable to Plaintiff's common law bad faith claim; rather, the choice-of-law question is answered through application of the Restatement's most-significant-relationship test. *Bartelli*, 2024 WL 4528146, at *8. Because Certain Underwriters' argument for dismissal of the common law claims is based solely on the New York choice-of-law provision and does not substantively address the most-significant-relationship test, *see* [Doc. 78 at 5–7, 11],[5] they have not shown that dismissal of this claim is appropriate. The Motion to Dismiss is thus **DENIED** with respect to the common law claim.

B.   **Statutory Bad Faith**

That leaves the statutory claim, which is "different in terms of choice of law" compared to the common law claim. *Williams v. Allstate Prop. & Cas. Ins. Co.*, No. 19-cv-03368-REB-KLM, 2020 WL 9432884, at *3 (D. Colo. Sept. 28, 2020). Unlike a common law claim, which is independent from the insurance contract, a claim for unreasonable delay or denial derives directly from, and is dependent on, the existence of a valid, enforceable, and applicable insurance policy. *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (to prevail on the claim, the

---

[5] In a footnote, Certain Underwriters assert that the state with the most significant relationship to the dispute "is undoubtedly New York for the reasons set forth" in their Motion. [Doc. 78 at 6 n.1]. This conclusory statement is insufficient to properly raise the issue before the Court. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."). Moreover, to the extent Certain Underwriters rely on their arguments concerning AIR's connection to New York, *see* [Doc. 78 at 7–8], this does not suffice to establish that New York has the most significant relationship to the Parties and their dispute because it does not specifically address the factors in Restatement § 145 (including where the injury occurred and where the alleged injury-causing conduct occurred) or weigh the applicable factors. The argument also improperly relies upon facts not alleged in the Amended Complaint. *See* [*id.* at 7 & nn. 2–3].

11

plaintiff must provide that "(1) *benefits were owed under the policy*; and (2) defendant unreasonably delayed or denied payment of plaintiff's claim" (emphasis added)). "[W]here no benefits are owed, then payment of those benefits cannot, as a matter of law, have been unreasonably delayed to the insured or denied by the insurer." *Keller v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00474-CMA-KAS, 2023 WL 6048790, at *9 (D. Colo. Sept. 15, 2023), *report and recommendation adopted*, 2023 WL 7458357 (D. Colo. Oct. 2, 2023).

Courts in this District have routinely held that "[o]nce it has been determined that the law of a particular state governs the interpretation of an insurance contract," like here, then "any *statutory* insurance claims that implicate performance of the contract must also be raised under the law of the controlling state." *Werden v. Allstate Ins. Co.*, 667 F. Supp. 2d 1238, 1245 (D. Colo. 2009) (emphasis added); *see also, e.g., Williams*, 2020 WL 9432884, at *3; *Xcel Energy Servs., Inc. v. Nat'l Am. Ins. Co.*, No. 22-cv-02802-CNS-STV, 2023 WL 3764640, at *2 (D. Colo. June 1, 2023). This makes sense: to succeed on a claim for unreasonable delay or denial, a plaintiff must prove that benefits were owed under the insurance policy—an inquiry that often turns on the interpretation of the policy. Applying one state's law to the interpretation of a policy for purposes of a statutory bad faith claim but applying another state's law to the interpretation of that policy with respect to another claim—for example, a breach of contract claim—could lead to inconsistent and irreconcilable results. The Court thus agrees with the number of courts in this District ruling that a statutory claim flows from the insurance policy and is subject to a choice-of-law provision in that policy.

Therefore, the Parties' choice of law will govern unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2).

Plaintiff's argues that the Court should rule that the choice-of-law provision is unenforceable under § 187(2)(b), asserting that "applying New York law would contravene Colorado's fundamental policy of protecting Colorado insureds," [Doc. 93 at 12], but it does not expressly argue that Colorado has a "materially greater interest" in the determination of the issue than New York, *see generally* [*id.*]; *see also Wells Fargo Ins. Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1103 (D. Colo. 2016) (ruling that disregarding the choice-of-law provision requires both a finding that application of the law would be contrary to a fundamental policy of Colorado *and* a finding that Colorado had a materially greater interest than the chosen state in the determination of the issue).

Plaintiff contends that Colo. Rev. Stat. § 10-3-1115 "reflects a strong policy of protecting insureds from insurers' unreasonable and deleterious conduct" and that enforcing the Parties' choice-of-law provision would contravene this policy. [Doc. 93 at 13]. In support, Plaintiff notes that a statutory claim under § 10-3-1115 is a separate cause of action "in addition to and different from" a common law claim. [*Id.* (quoting *Kisselman*, 292 P.3d at 973 (emphasis omitted))]. Plaintiff also observes that the statute imposes "stringent, clear penalties on insurers for breaching their statutory duty." [*Id.*]. It concludes that the statute "thus reflects a strong policy of protecting insureds from insurers' unreasonable and deleterious conduct" and that this policy "would be

13

contravened by applying New York law here." [*Id.*].

The Court is respectfully unpersuaded that Plaintiff has met its burden to show that enforcing the Parties' New York choice-of-law provision would be contrary to a *substantial* fundamental policy of Colorado. "To succeed on a claim that the chosen law contravenes a fundamental policy of the forum state, the policy must be a substantial one." *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994). The Colorado Court of Appeals has instructed that "[a state's] not recognizing a claim or theory of recovery is not a substantial conflict which warrants a court's rejection of a contractually designated choice of law." *Id.*; *see also Saveraid v. State Farm Ins. Co.*, 597 F. App'x 492, 495 (10th Cir. 2015) (applying New Mexico law) ("Mere differences among state laws should not be enough to invoke the public policy exception." (quotation omitted)). "Otherwise, the forum law would always apply unless the foreign law were identical, and the exception would swallow the rule." *Saveraid*, 597 F. App'x at 495 (quotation omitted).

To the extent Plaintiff argues that the fact of the statute itself demonstrates a fundamental state policy, "[t]he mere fact that Colorado has enacted a statute prescribing unfair practices in the business of insurance is not in itself sufficient to demonstrate these provisions express a fundamental policy of the state." *Richardson*, 637 F. Supp. 3d at 1193. "Since every law is an expression of the public policy of the state, some higher threshold is needed to prevent the forum's law from being applied in every case." *Id.* (quoting *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 218 (10th Cir. 1992)). Further, accepting Plaintiff's argument would result in the routine rejection of insurance policy choice-of-law provisions because many states lack an analog to § 10-3-1115. This cannot be the correct result, *Saveraid*, 597 F. App'x at 495, especially because

14

Case No. 1:24-cv-01285-NYW-KAS    Document 106    filed 06/16/25    USDC Colorado
pg 15 of 16

"Colorado's interest in the validation of agreements and protection of the parties' expectations is a central policy underlying the law of contracts," *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1373 (Colo. 1979).

Moreover, insofar as Plaintiff argues that applying New York law would contravene Colorado's policy of "protecting Colorado insureds," [Doc. 93 at 12], Plaintiff does not explain how insureds would be left unprotected upon enforcement of the choice-of-law provision. The Court acknowledges that a statutory claim is separate and distinct from a common law claim, *Kisselman*, 292 P.3d at 975, but the fact that Colorado law recognizes the inherent duty of insurers to deal with their insureds in good faith—*and* recognizes a tort claim for a breach of that duty—itself provides some protection for insureds, *see Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984) ("The refusal of the insurer to pay valid claims without justification . . . defeats the expectations of the insured and the purpose of the insurance contract. It is therefore necessary to impose a legal duty upon the insurer to deal with its insured in good faith."). Stated differently, applying New York law would not eliminate any generalized policy of protecting Colorado insureds because there are other mechanisms in place to help protect insureds.

Because Plaintiff has not demonstrated that enforcing the choice-of-law provision with respect to the unreasonable delay or denial claim would be contrary to a substantial fundamental policy of Colorado (or argue that Colorado has a materially greater interest in the resolution of the issue), the Parties' choice-of-law provision must be enforced as to the statutory claim. And because New York law applies, Plaintiff cannot maintain a claim under a Colorado statute, as Plaintiff appears to recognize, *see* [Doc. 93 at 14 (arguing that "even if New York law applies, AIR's common law claim is valid," but making no

15

argument that the statutory claim is viable if New York law applies)]. Accordingly, the Motion to Dismiss is respectfully **GRANTED** as to Plaintiff's claim under § 10-3-1115. *See Richardson*, 637 F. Supp. 3d at 1194 n.6.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Certain Underwriters' Motion to Dismiss Plaintiff's First Amended Complaint's Fourth and Fiffth [sic] Claims for Relief [Doc. 78] is **GRANTED in part and DENIED in part**; and

(2) Plaintiff's claim under Colo. Rev. Stat. § 10-3-1115 is **DISMISSED without prejudice**.

DATED: June 16, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge