IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01285-NYW-KAS

APARTMENT INCOME REIT CORP.,

      Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYDS LONDON SUBSCRIBING TO POLICY NO.
B0713MEDTE2202301, and
EVEREST NATIONAL INSURANCE COMPANY,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Motion for Leave to Amend Complaint to Assert Claim for Exemplary Damages** [#135] (the "Motion")[1]. Defendants filed Responses [#159, #160] and Plaintiff filed a Reply [#191]. The Motion [#135] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3).[2] *See Memorandum* [#138]. The Court has reviewed the briefs, the case file, and the applicable law. For the reasons stated below, the Motion [#135] is **GRANTED**.[3]

---

[1] A slightly redacted version of the Motion is filed at [#135]. An unredacted version is filed under Level 1 restriction at [#136].

[2] All parties do not consent to magistrate judge jurisdiction. *See Signed Consent/Non-Consent Form* [#18].

[3] "Judges in this District remain split whether a magistrate judge's ruling on a motion to amend to add a claim for exemplary damages is dispositive or nondispositive." *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072-73 (D. Colo. 2019). However, "[c]ourts in this circuit have found that a magistrate judge's ruling on a motion to amend

## I.    Background

This matter arises from Plaintiff's June 2023 claim for coverage under a primary data protection liability insurance policy (the "Primary Policy") it purchased from two unincorporated Lloyd's Underwriter syndicates (the "Primary Insurers"), as well as under an excess insurance policy (the "Excess Policy") it purchased from Everest National Insurance Company (the "Excess Insurer"). *See Am. Compl.* [#59], ¶¶ 2, 8-9, 13-23. Plaintiff's claim was prompted by "sprawling allegations" against it of "an antitrust conspiracy involving the multifamily rental housing industry's alleged use of RealPage, Inc.'s revenue management software, which became the focus of multiple legal actions," including the multi-district litigation (MDL), *In re RealPage, Inc., Rental Software Antitrust Litig.*, No. 3:23-md-03071, MDL No. 3071 (M.D. Tenn.). *Id.* ¶¶ 2, 37.

Primary Insurers denied Plaintiff's claim under the Primary Policy, and Plaintiff subsequently initiated this action on May 8, 2024. *Compl.* [#1]. The Scheduling Order [#41] was entered on September 3, 2024. On December 13, 2024, Plaintiff moved for a two-week extension of the deadline to amend pleadings, from December 13, 2026, to December 27, 2026. *Motion* [#48]. The Court granted the extension. *Min. Order* [#57]. On December 27, 2026, Plaintiff moved to amend the operative complaint to add allegations that it has suffered losses in excess of the Primary Policy's $5,000,000 aggregate limit of liability coverage, entitling it to coverage under the Excess Policy. *See Redlined Prop.*

---

is nondispositive 'particularly where the magistrate judge's order grants leave to amend and does not have the effect of removing any claim or defense.'" *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 16-cv-2946-WJM-NYW, 2018 WL 1755784, at *1 (D. Colo. Apr. 12, 2018) (quoting *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002)); *see also Hendrickson v. Doyle*, No. 14-cv-02013-WJM-KLM, 2015 WL 2106225, at *1 n.2 (D. Colo. May 4, 2015) ("In this case the Court grants Plaintiff's request to amend his First Amended Complaint to add a claim for punitive damages. Therefore, the Court assumes that the issue is not dispositive.").

*Am. Compl.* [#50-1], ¶¶ 22, 54-57, 83-86. The Court granted the motion for leave to amend. *Order* [#58]. In the Amended Complaint [#59], Plaintiff asserts claims for breach of contract, declaratory judgment, common law bad faith, and statutory bad faith against Primary and Excess Insurers. *Am. Compl.* [#59] at 15-21. The parties then engaged in substantial discovery throughout 2025.

On December 24, 2025, Plaintiff filed the instant motion again seeking leave to amend the complaint, this time to assert claims for punitive or exemplary damages against Primary and Excess Insurers. *Motion* [#135]. As grounds, Plaintiff alleges that Primary Insurers misrepresented certain coverages, exclusions, and definitions in the Primary Policy; attempted to retroactively change the language of the policy after discerning that Plaintiff's claim might fall within the policy's coverage; and refused to properly investigate Plaintiff's claim. *Id.* at 5-13. Plaintiff alleges that Excess Insurer also failed to properly investigate Plaintiff's claim, failed to timely communicate with Plaintiff, and repudiated its obligation to mediate. *Id.* at 9, 12-15. Plaintiff's proposed Second Amended Complaint contains new allegations consistent with the theories propounded in the Motion [#135]. *See Plf.'s Ex 2, Redlined Prop. Second Am. Compl.* [#136-43]. Insurers oppose the Motion [#135] on the ground that it is unduly delayed and unfairly prejudicial, that Insurers acted according to the advice of counsel, and that Plaintiff failed to propound prima facie proof of a triable issue on exemplary damages. *See Responses* [#159, #160].

The Court held a hearing on the Motion [#135] on April 6, 2026, and took the Motion [#135] under advisement. *Courtroom Mins.* [#265].

3

## II.     Legal Standard

Courts in this District generally employ a two-step analysis in determining whether a party may amend their pleadings beyond the deadline for amendment of pleadings established in the Scheduling Order. First, a court considers whether the moving party demonstrates good cause pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1118 (10th Cir. 2021). Second, the court weighs whether the amendment should be allowed under Rule 15(a). Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." In other words, "[i]f the underlying facts or circumstances relied upon by a [litigant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Denying leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Under Colorado law, however, amendments concerning exemplary damages are governed by Colo. Rev. Stat. § 13-21-102. Section 13-21-102(1)(a) allows the jury to award "reasonable exemplary damages" in any civil action in which "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct[.]" However, "[a] claim for exemplary damages . . . may not be included in any initial claim for relief." *Id.* It must instead be asserted by amendment to the pleadings "only after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." *Id.* "The existence of a triable issue on punitive damages may be established

4

through discovery, by evidentiary means, or by an offer of proof." *Leidholt v. Dist. Court*, 619 P.2d 768, 771 (Colo. 1980). Like any other motion to amend governed by Rule 15(a), motions to add exemplary damages pursuant to § 13-21-102 may be denied because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

The Tenth Circuit has not addressed whether § 13-21-102's requirement that the pleader establish prima facie evidence of a triable issue applies to a motion to amend before a federal court sitting in diversity and applying Colorado law, or whether the inquiry is governed solely by Rules 15(a) and 16(b). *Burke v. Lindner*, No. 23-cv-01295-GPG-KAS, 2024 WL 3650445, at *2 (D. Colo. Aug. 3, 2024). However, other courts in this District have applied the Colorado statute. *See, e.g.*, *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug. 29, 2008); *Am Econ. Ins. Co. v. William Schoolcraft, M.D. P.C.*, No. 05-cv-01870-LTB-BMB, 2007 WL 160951, at *1-2 (D. Colo. Jan. 17. 2007).

Further, the Court is aware of the United States Supreme Court's recent opinion in *Berk v. Choy*, 146 S. Ct. 546 (2026), which was issued approximately one month after the Motion's [#135] filing, and which the parties have not substantively briefed. In *Berk*, the Court held that a Delaware statute requiring medical malpractice complaints to be accompanied by an affidavit of merit in order for a case to proceed conflicts with Rule 8 of the Federal Rules of Civil Procedure because it "demands more" than a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 554; FED. R. CIV. P. 8(a)(2); *see also Famuyide v. Chipotle Mexican Grill, Inc.*, No. 23-cv-01127 (DWF/ECW), 2026 WL 765356, at *4 (D. Minn. Mar. 18, 2026) (applying Rule 15(a) to a

motion for leave to add punitive damages instead of a similar punitive damages statue

under Minnesota law). However, the Court need not dive too deeply into the question of

which framework governs the instant Motion [#135] because, even under § 13-21-102's

more exacting requirements, Plaintiff has met its burden.

### III.    Analysis

### A.    Prima Facie Evidence

To assert a claim for exemplary damages pursuant to § 13-21-102, the pleader

must establish prime facie proof of fraud, malice, or willful and wanton conduct. "Prima

facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*,

172 P.3d at 449. The submitted evidence must establish "a reasonable likelihood that the

issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidholt*, 619 P.2d

at 771 n.3). "'[W]illful and wanton conduct' means conduct purposefully committed which

the actor must have realized as dangerous, done heedlessly and recklessly, without

regard to consequences, or of the rights and safety of others, particularly the plaintiff."

§ 13-21-102(1)(b). "[M]ere negligence cannot support an award of exemplary damages[.]"

*Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 10 (Colo. App. 1986).

"[A]t this stage of the litigation, the Court is only concerned with whether the

evidence, when viewed in the light most favorable to Plaintiff[ ], is sufficient to make out

a prima facie case of willful and wanton behavior[,] . . . not whether such evidence is

sufficient to defeat a motion for summary judgment." *Stanton v. Encompass Indem. Co.*,

No. 12-cv-00801-PAB-KLM, 2013 WL 2010829, at *4 (D. Colo. May 14, 2013) (italics

omitted); *see also Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020 WL

6290375, at *5 (D. Colo. Oct. 27, 2020) (describing the burden on a motion to amend pursuant to § 13-21-102 as "an admittedly low threshold").

Plaintiff's leading theory of entitlement to exemplary damages is that Primary Insurers issued a claim denial letter that omitted a relevant sentence from the policy language, amounting to a material misrepresentation of the policy. *Motion* [#135] at 5-6. Section V of the Primary Policy lists exclusions applicable to all coverages, and Section VI lists exclusions of limited applicability. Subsection VI(H) provides an exclusion for antitrust violations, and reads in relevant part,

> (VI) The coverage under this policy shall not apply to that part of any claim:
>
> (H) For the Assured's antitrust violations, restraint of trade, price fixing, or similar anticompetitive conduct, including without limitation, violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act, or any other federal, state, local, or foreign laws regulating the same or similar conduct. **This exclusion shall not apply to a Claim under Coverage A.1 Privacy Liability, A.2 Privacy Regulatory Liability or A.5 Multimedia Liability.**

*Plf.'s Ex. 1.A, Primary Policy* [#135-2] at 32[4] (emphasis added). However, in Primary Insurer's claim denial letter, Primary Insurers stated:

> We note that Section V EXCLUSIONS APPLICABLE TO ALL COVERAGES of the Policy provides that Underwriters are not liable to make any payment in connection with any Claim to the extent such Claim is brought about or contributed to in fact by, among other things and in relevant part . . . (c) any antitrust violation, restraint of trade, price fixing or similar anti-competitive conduct, including without limitation, violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act, or any other federal, state, local or foreign laws regulating the same or similar conduct.

---

[4] Citations to page numbers are to the document's original pagination, if the original document was paginated. For documents without original pagination, the Court cites the numbering stamped at the top of each page by the Court's CM/ECF docketing system.

*Plf.'s Ex. 1.O, Primary Insurers' Claim Denial Letter (dated Oct. 2, 2025)* [#136-30][5] at 5-6. Primary Insurers made this statement even after their coverage counsel advised them that the antitrust exclusion *does not apply* to claims falling within the scope of Privacy Liability, Privacy Regulatory Liability, or Multimedia Liability coverage. *Plf.'s Ex. 1.X, Merlino Email (dated Aug. 14, 2023)* [#136-40][6] at 6. Plaintiff provides evidence of a follow-up claim denial letter in which Primary Insurers admitted that the antitrust exclusion in question did not, in fact, apply to all coverages under the policy as Primary Insurers had earlier represented, but that coverage was nevertheless unavailable. *Plf.'s Ex. 1.P, Second Claim Denial Letter (dated Oct. 23, 2023)* [#135-32] at 3.

Additionally, Plaintiff asserts that it has established a prima facie triable issue for an award of exemplary damages based on the following evidence:

- Primary Insurers maintained that Plaintiff was not entitled to coverage, although an internal initial report acknowledged that "coverage could potentially fall within the scope of coverage Insuring Agreement 1 (Privacy Liability) and Insuring Agreement 5 (Multimedia Liability)." *Plf.'s Ex. 1.OO, Merlino Email* [#136-31][7] at 3; *see also Motion* [#135] at 6.

- Primary Insurers, in denying coverage, quoted from a portion of the Primary Policy that Primary Insurers had deleted and replaced with an endorsement. *Motion*

---

[5] This document was filed under Level 1 restriction, which limits access to the Court and to the parties. *See* D.C.COLO.LCivR 7.2(b).

[6] Filed under Level 1 restriction.

[7] Filed under Level 1 restriction.

[#135] at 7; *Reply* [#191][8] at 11-12; *Plf.'s Ex. 1.P, Second Claim Denial Letter* [#135-32] at 3 (denying coverage, in part, based on Section I(A)(5)); *Plf.'s Ex. 1.A, Primary Policy* [#135-2] at 52-53 (endorsement displacing Section I(A)(5)); *Plf.'s Ex. 1.MM, Barton and Allen Dep.* [#135-27] at 185:8-193:10; *Plf.'s Ex. 1.FF, Foster Email* [#136-13][9].

- Internal emails from Primary Insurers indicating that the endorsement, as written, could allow for coverage under the policy, but that such language must be an "obvious error" or "scrivener's error."[10] *Motion* [#135] at 8; *Plf.'s Ex. 1.Z, Kalorides Email* [#136-42][11]; *Plf.'s Ex. 1.AA, Kissel Email* [#136-3][12]; *Plf.'s Ex. 1.BB, Thomas Email* [#136-5][13].

---

[8] This filing is slightly redacted. An unredacted version filed under Level 1 restriction is docketed at [#192].

[9] Filed under Level 1 restriction.

[10] Plaintiff provides documentary evidence that Primary Insurers undertook steps to have the purported error corrected in Plaintiff's policy and in all other policies in which the error had been included. *Plf.'s Ex. 1.GG, Nov. 2023 Email Chain* [#135-15]; *Plf.'s Ex. 1.HH, Barton Email* [#135-17]; *Plf.'s Ex. 1.II, Wilmer Dep.* [#135-19] at 134:5-135:3, 148:18-151:10. Plaintiff alleges that the aforementioned efforts were made "in order to eliminate coverage for AIR's claim" and to "deprive AIR of Policy benefits." *Motion* [#135] at 8. But Plaintiff does not provide any prima facie evidence, at this stage, to support its theory that the correction was made for the specific purpose of "eliminating coverage for AIR's claim." In its Reply [#191], Plaintiff reasons that Primary Insurers attempted to correct the purported error "<u>after</u> the policy term had expired, such that the only reason for seeking to modify the endorsement was to deny coverage." *Reply* [#191] at 14. Plaintiff does not, however, support that inference with evidence. At the April 6, 2026 Motion Hearing, Plaintiff's counsel appeared to concede that the attempts to correct the error were forward-looking and had no effect on the claim already lodged, but that they were made in order to generally undermine Plaintiff's legal position.

[11] Filed under Level 1 restriction.

[12] Filed under Level 1 restriction.

[13] Filed under Level 1 restriction.

- Excess Insurer did not adequately conduct its own coverage investigation and analysis, instead adopting Primary Insurers' position as its own. *Reply* [#191] at 10; *Plf.'s Ex. 1.Q, Excess Insurer Claim Denial Letter* [#135-33] at 3; *Plf.'s Ex. 1.JJ, Mabutas Dep.* [#135-21] at 91:15-25.

- Primary and Excess Insurers adopted the position that the Sherman Act is not a "Privacy Law" within the meaning of the policy without conducting adequate legal research. *Motion* [#135] at 10-11; *Plf.'s Ex. 1.JJ, Mabutas Dep.* [#135-21] at 84:8-85:5; *Ex. 1.II, Wilmer Dep.* [#135-19] at 100:9-102:14.

- Primary and Excess Insurers adopted the position that Plaintiff's use of information was not "unauthorized" within the meaning of the policy without conducting adequate legal research. *Motion* [#135] at 10-11; *Plf.'s Ex. 1.II, Wilmer Dep.* [#135-19] at 86:2-88:25; *Plf.'s Ex. 1.MM, Barton and Allen Dep.* [#135-27] at 43:24-46:22; *Plf.'s Ex. 1.NN, Everest Nat'l Ins. Co. 30(b)(6) Dep.* [#135-29] at 54:8-58:1.

- In denying coverage, Excess Insurer stated that the service of a subpoena did not amount to a "Claim" within the meaning of the policy because it "does not constitute a demand for monetary Damages or non-monetary relief, is not a civil suit, does not constitute the service or receipt of a civil proceeding, and does not indicate that the DOJ or any other regulatory entity has commenced an administrative regulatory proceeding." *Motion* [#135] at 11-12; *Plf.'s Ex. 1.U, Excess Insurer Subpoena Claim Denial* [#135-37]. However, Excess Insurer omitted a component of the definition of "Claim" within the policy that includes "any civil, administrative, or regulatory request for information" for purposes of coverage provided under

section A.2 Privacy Regulatory Liability. *Plf.'s Ex. 1.A, Primary Policy* [#135-2] at

17.

- Excess Insurer failed to respond to substantive communications concerning its
  obligation to mediate with Plaintiff on at least four occasions and delayed signing
  a nondisclosure agreement in order to view the confidential settlement reached in
  the MDL until the eve of mediation. *Motion* [#135] at 13-14; *Plf.'s Ex. 1.LL, Mabutas*
  *Emails* [#135-25].

In support of its prima facie evidence, Plaintiff points the Court to authorities

establishing that an insurer's misrepresentation of a policy or proffer of false information

can give rise to an award of exemplary damages. *See Sands v. Integon Nat'l Ins. Co.*,

No. 18-cv-00714-PAB-NYW, 2020 WL 8188184, at *7 (D. Colo. Mar. 9, 2020), *report and*

*recommendation adopted*, 2020 WL 8188168 (D. Colo. Mar. 25, 2020); *Linder v. Horace*

*Mann Ins. Co.*, No. 19-cv-02071-CMA-KMT, 2020 WL 13490512, at *3 (D. Colo. Mar. 5,

2020); *see also Stanisavljevic v. Standard Fire Ins. Co.*, No. 22-cv-03287-RM-SBP, 2024

WL 1330125, at *7 (D. Colo. Mar. 28, 2024) (holding that "imposing requirements for her

claims that arguably are inconsistent with the policy, Colorado law, or both" can give rise

to exemplary damages).

Further, Plaintiff correctly notes that an insurer's failure to properly investigate or

take action with respect to an insured's claim can give rise to exemplary damages.

*Schimek v. Owners Ins. Co.*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833, at *4 (D.

Colo. Aug. 23, 2017); *State Farm Mut. Auto. Ins. Co. v. Fisher*, No. 08-cv-01687, 2009

WL 1011194, at *4 (D. Colo. Apr. 15, 2009). So, too, can an insurer's failure to timely

communicate. *Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *3 (D. Colo. Oct. 10, 2023).

Viewing all evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has proffered evidence that is sufficient, unless rebutted, to establish that Insurers acted "without regard to consequences[ ] or of the rights" of Plaintiff and thus engaged in willful or wanton conduct. COLO. REV. STAT. § 13-21-102(1)(b). In other words, Plaintiff has provided a plausible basis for exemplary damages liability if its version of the facts and potential evidence are assumed to be true. *Stanisavljevic*, 2024 WL 1330125, at *7.

To be sure, Primary and Excess Insurers have propounded evidence giving rise to factual disputes between the parties on these issues, but courts do not resolve disputed issues of fact on a motion to amend. *See Louradour v. United Launch All., L.L.C.*, No. 20-cv-00608-RMR-NYW, 2021 WL 4947316, at *7 (D. Colo. Sept. 9, 2021) ("Contrary evidence is not part of the equation in determining whether a prima facie showing under § 13-21-201 has been made.") (citation and internal quotations omitted); *Affordify*, 2020 WL 6290375, at *6 ("[B]riefing on the Motion to Amend is no place to be making summary judgment arguments.").

To the extent that Primary and Excess Insurers invoke the "advice of counsel" defense, the Court finds that the defense is unavailing here. Primary Insurers cite *Barrera v. American National Property & Casualty Co.*, in which the court recognized that many jurisdictions consider an insurer's reliance on advice of counsel before making a decision that adversely affects its insured's "defense to exemplary damages." No. 12-cv-00413-WYD-MEH, 2012 WL 6590197, at *6 (D. Colo. Nov. 15, 2012), *report and recommendation adopted*, 2012 WL 6590145 (D. Colo. Dec. 17, 2012). The court

concluded that the plaintiff's flawed motion for leave to add exemplary damages was further undermined by the fact that the insurer's reasonable action was taken on the advice of counsel, and that the defense "provides the nail in the coffin for a claim of exemplary damages." *Id.*

But here, Primary and Excess Insurers do not assert that all the conduct outlined above was taken on advice of counsel. Indeed, Plaintiff provides prima facie evidence that at least one policy misrepresentation *contravened* coverage counsel's clear explanation of the policy. *Compare Plf.'s Ex. 1.O, Primary Insurer's Claim Denial Letter* [#135-30] at 5-6, *with Plf.'s Ex. 1.X, Merlino Email* [#136-40][14] at 6. Therefore, the Court finds that the extent to which Primary and Excess Insurers can rely on the advice of counsel defense is a question best left for summary judgment. *See Geoffroy v. Amica Mut. Ins. Co.*, No. 16-cv-01736-MSK-KMT, 2017 WL 11545772, at *3 (D. Colo. Dec. 1, 2017) ("But the fact that Amica might have a defense to the Geoffroys' request for punitive damages (a contention this Court need not evaluate) is not a basis for preventing the Geoffroys from asserting that request.").

**B.    Untimeliness**

Primary and Excess Insurers next argue that Plaintiff fails to establish good cause to amend the complaint beyond the deadline for amendment of pleadings established in the Scheduling Order. Further, Insurers assert that because Plaintiff filed the motion a year after the deadline to amend had passed and after the close of fact discovery, the amendment is unduly delayed.

---

[14] Filed under Level 1 restriction.

In this case, Plaintiffs were operating under the framework set out in § 13-21-102, which required Plaintiff to not only assert plausible allegations in any motion for leave to add a claim for exemplary damages, but to proffer prima facie evidence of a triable issue. "[I]f a plaintiff has diligently sought to develop the evidence sufficient to establish a prima facie case for exemplary damages, learns new information through discovery, and has not unduly delayed in moving to amend once that evidence is collected, then good cause for the amendment is established." *Shalz Constr. LLC v. Great Lakes Ins.*, No. 22-cv-03005-NYW-NRN, 2025 WL 952540, at *6 (D. Colo. Mar. 31, 2025); *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug. 29, 2008) (noting that evidence necessary to establish the prima facie case for exemplary damages is expected to come from the "discovery process").

In this District, the undue delay analysis "focuses primarily on the reasons for the delay" and denial of leave is appropriate where a party has no adequate explanation for the delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (collecting cases). "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target,' [or] to 'salvage a lost case by untimely suggestion of new theories of recovery[.]'" *Id.* (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)). Additionally, a court may find undue delay and deny leave where "the facts underlying the claim were known to the plaintiff at the time suit was instituted." *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

Here, the Scheduling Conference took place in September 2024. To be sure, Plaintiff had in its possession much of the documentary evidence supporting its claims

well before December 2025 when it filed the instant motion. However, Plaintiff conducted its final deposition on November 12, 2025. The final deposition was of a Rule 30(b)(6) representative for Primary Insurers' coverage counsel firm, and the deposition resulted in at least some evidence that Plaintiff later used to make its prima facie case. Specifically, the deposition testimony was probative of the level of research and investigation Primary Insurers undertook in reaching their coverage decision. *Plf.'s Ex. 1.II, Wilmer Dep.* [#135-19] at 102:11-14 (coverage counsel did not consult antitrust experts in reaching its coverage recommendation); *id.* at 87:20-100:8 (discussing the legal research that coverage counsel's team conducted on the meaning of the word "unauthorized" in the policy). Plaintiff filed the instant Motion [#135] on December 24, 2025—six weeks later.

The Court does not fault Plaintiff for waiting to see whether the deposition of coverage counsel provided additional support for its motion for leave to amend and for taking some time to process the information received, particularly in a case with such a voluminous record. *See Shalz*, 2025 WL 952540, at *7 ("Plaintiffs cannot be faulted for seeking additional information and documents and reviewing the information prior to filing the Motion to Amend."); *Louradour*, 2021 WL 4947316, at *7-8 (granting leave to amend where the motion was filed after the conclusion of fact depositions and where the last deposition provided information on which the plaintiff relied); *Gile v. Schmidt*, No. 16-cv-02498-PAB-NYW, 2018 WL 3056074, at *1 (D. Colo. Jan. 26, 2018) ("[T]his court finds it imprudent to penalize Plaintiffs for first satisfying themselves as to the sufficiency of the evidence regarding the higher burden of proof, particularly when the Motion to Amend was filed but two days after the close of discovery[.]"), *report and recommendation adopted*, 2018 WL 6790310 (D. Colo. May 3, 2018). For the same reason, the Court is

unpersuaded by Excess Insurer's arguments that (1) Plaintiff could have made the same prima facie case in January 2025 (when it sought leave to add Excess Insurer), and (2) that the timing of the Motion [#135] can only be explained by Plaintiff's dilatory motive.

## C.    Undue Prejudice

Finally, Primary and Excess Insurers claim that they would be unduly prejudiced by the proposed amendment. "[A]ny amendment invariably causes some 'practical prejudice,'" but "undue prejudice means that the amendment would 'work an injustice to the [opposing party].'" *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) (quoting *Carefusion 213, LLC v. Pro. Disposables, Inc.*, No. 09-cv-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010)).

The Court finds that Primary and Excess Insurers will not be demonstrably prejudiced by the amendment. First, the proposed amendments do not expand the factual bases of Plaintiff's claims or otherwise change the scope of the litigation. *See Shalz*, 2025 WL 952540, at *7 ("The request for exemplary damages is a request for an additional form of **relief**. It is not a substantive claim that requires additional factual elements to prove.") (emphasis in the original). Thus, the Court is not persuaded that significant additional discovery will be necessary for Insurers to defend against the claim. To the extent that Insurers feel the need to take or reopen a deposition of Plaintiff's 30(b)(6) representative, the Court does not view that as an extraordinary additional cost that would not have otherwise been incurred if the request for exemplary damages was added earlier. With respect to the litigation's progress, the Final Pretrial Conference has not occurred and there is no trial date. And the Court recently permitted the parties to file updated summary judgment motions for reasons unrelated to the instant Motion [#135].

*Courtroom Mins.* [#265]; *Min. Order* [#267]. Those motions are due July 27, 2026. *Min. Order* [#267]. Thus, the parties will have an adequate opportunity to brief the exemplary damages issue in their renewed summary judgment motions. *See Graham v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-00920-REB-NYW, 2020 WL 9720368, at *7 (D. Colo. June 30, 2020), *report and recommendation adopted*, 2021 WL 2092813 (D. Colo. Mar. 31, 2021)

Further, in its original Complaint [#1] and in its Amended Complaint [#59], Plaintiff alleged that Insurers' "prolonged delay in providing a coverage decision, failure to investigate AIR's claim, repeated misrepresentations of policy provisions, and interference with AIR's ability to settle promptly, together, demonstrate that the [Insurers] have acted in bad faith and under circumstances *evincing willful and wanton conduct*." *Complaint* [#1] ¶ 5; *Amended Complaint* [#59] ¶ 5. Thus, Insurers were on notice that Plaintiff might seek to add a claim for exemplary damages from the inception of this case. *Louradour*, 2021 WL 4947316, at *8 (finding no prejudice where an earlier version of the complaint put the defendant on notice of the possibility of a claim for exemplary damages). The Scheduling Order similarly put Insurers on notice that Plaintiff intended to seek punitive damages. *Scheduling Order* [#41] at 7; *Gile*, 2018 WL 3056074, at *6 (finding that the defendants were not prejudiced by the addition of a demand for exemplary damages "given the fact that both Plaintiffs' Initial Disclosures and the Scheduling Order alerted Defendants that Plaintiffs would seek to include such a demand")."

Accordingly, the Court finds that Plaintiff has met its burden under either § 13-21-102 or Rules 15(a) and 16(b), and thus the Motion [#135] should be granted. In so finding,

17

the Court only answers the preliminary question of whether Plaintiff made a prima facie

case and offers no opinion on the merits of Plaintiff's demand for exemplary damages.

### IV.    Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#135] is **GRANTED**.

Dated: April 29, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge